Art Matthews, Esq.
1801 Century Park East, 24th Floor
Los Angeles, CA  90067
310-556-9620

Of Counsel, Hyslip & Taylor LLC LPA
917 W. 18th Street, Suite 200
Chicago, IL  60608
312-380-6110

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Kacey Rice f/k/a Kacey Lowers<br><br>Plaintiff,<br><br>v.<br><br>Encore Capital Group Inc. and Holloway and Moxley, LLP<br><br>Defendants. | Case No. **'14CV0598 JAH  RBB**<br><br>**COMPLAINT FOR DAMAGES UNDER THE FAIR DEBT COLLECTION PRACTICES ACT**<br><br>**JURY DEMAND ENDORSED HEREIN** |

## INTRODUCTION

1. This consumer action is brought to remedy Encore Capital Group Inc.'s unfair practices concerning collection of time-barred debts.

2. The unfair and deceptive collection of time-barred debts is a significant problem harming consumers today.

3. The FTC explains; "If you have old debts, collectors may not be able to sue you to collect on them. That's because debt collectors have a limited number of years — known as the statute of limitations — to sue you to collect. After that, your unpaid debts are considered 'time-barred.' According to the law, a debt collector cannot sue you for not paying a debt that's time-barred." See https://www.consumer.ftc.gov/articles/0117-time-barred-debts

4. Plaintiff brings this case under the Fair Debt Collection Practices Act to hold Encore Capital Group Inc. and its law firm accountable for its practice of suing on time-barred debts.

## PARTIES

5. Plaintiff, Kacey Rice formerly known as (f/k/a) Kacey Lowers, ("Kacey"), is a consumer who resided in Owens Cross Roads, Alabama, at all times relevant to this action.

6. Defendant, Holloway and Moxley, LLP, ("HM"), is an Alabama Limited Liability Partnership that maintained its principal place of business in Montgomery, Alabama, and did business with San Diego headquartered Midland Funding LLC at all times relevant to this action.

7. HM collections conduct directed at Kacey arose out of HM's contacts with Midland Funding LLC and Defendant Encore Capital Group Inc.'s ("Encore") Legal Collections department based in San Diego, California.

8. HM files lawsuits on behalf of Defendant Encore.

9. Encore is a Delaware corporation headquartered in San Diego, CA.

10. HM files lawsuits in the name of Midland Funding LLC on behalf of Encore.

11. Midland Funding LLC is a subsidiary of Encore with no employees.

12. Encore is a debt collector.

13. At the Raymond James 35th Annual Institutional Investors Conference on Tuesday, March 4, 2014, Encore published a slide presentation that stated that, "ENCORE IS A LEADING PLAYER IN THE CONSUMER DEBT PURCHASING AND RECOVERY INDUSTRY."

14. Encore devises collection policies and practices for Midland and law firms like HM.

15. Encore (a) secures funds from investors and lenders for the purpose of purchasing the debts to which Midland Funding LLC takes title, (b) devises the collection strategies for law firms and (c) participates in the debt collection activities complained of.

16. Encore has stated in its filings with the Securities & Exchange Commission that, "We are a leader in consumer debt management and recovery solutions... We purchase portfolios of defaulted consumer receivables at deep discounts to face value and use a variety of operational channels to maximize our collections from these portfolios." Form 10-K filed by Encore with the SEC for year ending Dec. 31, 2012, original page 1.

17. Encore devises the "collection strategies" used by its subsidiaries. Form 10-K filed by Encore with the SEC for the year ending December 31, 2012, original p. 4, states, under "Collection Approach," that;

"We expand and build upon the insight developed during our purchase process when developing our account collection strategies for portfolios we have acquired. Our proprietary consumer-level collectibility analysis is the primary determinant of whether an account is actively serviced post-purchase. Generally, we pursue collection activities on only a fraction of the accounts we purchase, through one or more of our collection channels. The channel identification process is analogous to a decision tree where we first differentiate those consumers who we believe are unable to pay from those who we believe are able to pay. ...It is our practice to assess each consumer's willingness to pay through analytics, phone calls and/or letters...However, the majority of consumers we contact ignore our calls and our letters and we must then make the decision about whether to pursue collections through legal action.... Throughout our ownership period, we periodically refine this analysis to help determine the most effective collection strategy to pursue for each account."

18. Form 10-K filed by Encore with the SEC for the year ending December 31, 2012, original p. 4, states:

"Leveraging an industry-leading distressed consumer database, our in-house team of statisticians, business analysts, and software programmers have developed, and continually enhance, proprietary behavior and valuation models, custom software applications, and other business tools that guide our portfolio purchases. Moreover, our collection channels are informed by powerful statistical models specific to each collection activity, and each year we deploy significant capital to purchase credit bureau and customized consumer data that

describe demographic, account level, and macroeconomic factors related to credit, savings, and payment behavior."

19. Paul Grinberg, Executive Vice President and Chief Financial Officer of Encore, stated on February 26, 2014 during an Earnings Call that;

"Our legal channel, which includes both legal outsourcing and our internal legal operation in the United States, continues to be a strong contributor to the business both in terms of dollars collected and cost-to-collect. Total dollars collected in our legal outsourcing channel was $469 million at a cost-to-collect of 35.9%, down from 37.8%. This decrease was primarily related to improvements in our ability to more accurately and consistently identify those consumers with the financial means to repay their obligations. Total dollars collected in our internal legal channel were $96 million at a cost-to-collect of 47.3%. In 2011, our cost-to-collect in internal legal was over 200% as we were investing in our technology platform, hiring staff and opening new sites. As our volume in the channel increased our cost-to-collect came down. In 2012, our cost-to-collect was over 80% and this year it dropped significantly. In our 10-K, which we filed earlier today, we have broken out our legal cost-to-collect between our external and internal legal channels. This provides you with more visibility to our progress in reducing cost-to-collect in our internal legal channel… For Encore, legal action is always a last resort and is pursued only after numerous attempts to communicate and reach an acceptable agreement with the consumer."

20. Encore shares common officers and directors with its subsidiaries.

21. A number of Encore's officers are located at the office where Midland Funding has its principal place of business in San Diego.

22. Managers who work for Encore's Legal Collections are located in San Diego, CA.

23. The Encore corporate form exists only to insulate Encore from FDCPA liability.

24. Midland Funding acts at the direction and on behalf of Encore and thus HM acted on the direction from Encore and its "Legal Collections" department.

## JURISDICTION AND VENUE

25. Pursuant to 28 U.S.C. §1331, this Court has federal question jurisdiction over this matter as it arises under the Fair Debt Collection Practices Act ("FDCPA"),

26. Pursuant to 28 U.S.C. §1391(b), venue is proper because Encore is located in this District and a substantial part of the events giving rise to this claim occurred in this judicial district

because Midland Funding LLC is also located in this District and Encore is located in this District and HM has an attorney-client relationship with Midland Funding LLC and therefore there is specific personal jurisdiction over Defendants in this District with respect to this action. The claims in this case arise out of HM's contact with this District.

## STATEMENT OF FACTS

27. Defendants regularly use instrumentalities of interstate commerce and the mails to collect consumer debts owed or due or asserted to be owed or due another.

28. Defendants are "debt collectors" that regularly collect consumer debts as defined by 15 U.S.C. §1692a(6).

29. HM provides legal services for Encore and Midland Funding LLC, which are both headquartered in San Diego, CA.

30. Encore makes litigation decisions in California.

31. Encore operates a "Legal Collections" department in San Diego.

32. Encore's "Legal Collections Operation is the largest revenue channel for the company, responsible for approximately half of [its] total revenue. It is comprised of a large outsourced network of law firms…. The channel has experienced rapid growth as a result of combining [its] strength in data and analytics with efficient operations as well as optimizing performance of [its] vendor/firm partners." See http://encore-jobs.com/careers/legal-collections-jobs

33. HM files lawsuits based upon litigation decisions made by Encore from California.

34. This alleged obligation is a "debt" as defined by 15 U.S.C. §1692a(5) because it related to an alleged credit card open account used for personal, household and family purposes.

35. Kacey is a "consumer" as defined by 15 U.S.C. §1692a(3).

36. Around early 2013, HM contacted Kacey on her phone in connection with the collection of the debt.

37. On more than one occasion, HM hung up when Kacey answered the phone.

38. On more than one occasion, Kacey informed HM the debt was time barred and Kacey was not going to pay the debt. In addition, Kacey requested HM cease further calls to Kacey.

39. Despite this request, HM contacted Kacey on numerous occasions on Kacey's phone in connection with the collection of the debt.

40. On or around April 17, 2013, Kacey sent a written communication via email to HM and requested HM cease further contact with Kacey with respect to debts.

41. Despite this request, HM continued to contact Kacey on her phone and via written communication numerous times after 4/17/13 with respect to debts.

42. On at least one occasion, HM contacted Kacey's mother, ("Mother"), in connection with the collection of the debt.

43. During this communication, HM disclosed to Mother that Kacey owed the debt.

44. At the time of this communication, HM already had Kacey's location information.

45. In October 2013, Defendants caused a lawsuit to be filed in Small Claims Court against Kacey on a time-barred debt.

46. A disputed credit card debt is an open account with a three-year statute of limitations. See *Ayers v. Cavalry SVP I, LLC*, 876 So. 2d 474, 478 (Ala. App. 2004).

47. Defendants caused Kacey severe emotional distress.

48. Defendants violated the FDCPA.

49. Encore frequently and persistently fails to comply with the FDCPA when attempting to collect time-barred debts.

50. Encore has caused numerous lawsuits to be filed on time-barred debts. See *Hunter v. Midland Funding LLC, et. al*. 14-cv-00416 (N.D. Ala.)(Suing on time-barred debt); *Nesbit v. Midland Funding LLC* 13-cv-06579 (E.D. La.)(Suing on time-barred debt); *Ford v. Midland Funding LLC, et. al*. 13-cv-02824 (N.D. Ga.)(Suing on time-barred debt).

51. The nature of such noncompliance is egregious and harms consumer by exposing them to abusive and frivolous litigation.

### COUNT ONE

**Violation of the Fair Debt Collection Practices Act**

52. Plaintiff incorporates each of the preceding allegations as if specifically stated herein.

53. Defendant violated 15 U.S.C. §1692c(a)(1) by calling Plaintiff at a time or place known to be inconvenient for Plaintiff.

### COUNT TWO

**Violation of the Fair Debt Collection Practices Act**

54. Plaintiff incorporates each of the preceding allegations as if specifically stated herein.

55. Defendants violated 15 U.S.C. §1692c(b) by communicating with a third party in connection with the collection of the debt without Plaintiff's consent.

### COUNT THREE

**Violation of the Fair Debt Collection Practices Act**

56. Plaintiff incorporates each of the preceding allegations as if specifically stated herein.

57. Defendants violated 15 U.S.C. §1692c(c) by communicating with Plaintiff with respect to the debt notwithstanding its receipt of written instructions to cease communications with Plaintiff.

## COUNT FOUR

### Violation of the Fair Debt Collection Practices Act

58. Plaintiff incorporates each of the preceding allegations as if specifically stated herein.

59. Defendants violated 15 U.S.C. §1692d by engaging in conduct the natural consequence of which is to harass, oppress, or abuse Plaintiff in connection with the collection of the debt including continuing communication after a request to cease communication and then suing on a time-barred debt.

## COUNT FIVE

### Violation of the Fair Debt Collection Practices Act

60. Plaintiff incorporates each of the preceding allegations as if specifically stated herein.

61. Defendants violated 15 U.S.C. §1692f by using unfair or unconscionable means to collect the debt including continuing communication after a request to cease communication and then suing on a time-barred debt.

## JURY DEMAND

62. Plaintiff demands a trial by jury.

## PRAYER FOR RELIEF

63. Plaintiff prays for the following relief:

a. Judgment against Defendants for actual damages, statutory damages, and costs and reasonable attorney's fees pursuant to 15 U.S.C. §1692k.

b. For such other legal and/or equitable relief as the Court deems appropriate.

RESPECTFULLY SUBMITTED,

Hyslip & Taylor, LLC LPA

By: /s/ Arturo Matthews
      One of Plaintiff's Attorneys

*Of Counsel*
Art Matthews, Esq.
1801 Century Park East, 24th Floor
Los Angeles, CA  90067
310-556-9620

917 W. 18th Street, Suite 200
Chicago, IL  60608
312-380-6110